

**SIGNED THIS 24th day of June, 2022**

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE
DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

In re:
ALLEN WAYNE KNOTT,                                            Chapter 13
SABRINA GALE KNOTT,                                           Case No. 21-50423
    Debtors.

### MEMORANDUM OPINION

    The question in this case is whether individuals who do not meet the eligibility debt limits of Bankruptcy Code section 109(e) may nevertheless proceed under chapter 13 if not all creditors file proofs of claim for such debt and they successfully obtain disallowance of enough filed claims to render the total amount of filed allowed claims within the debt limits.  In other words, are the debt limits in section 109(e) based on the amounts claimed on proofs of claim filed with the Court after accounting for potential disallowance of some of those claims?  This Court answers no.  The eligibility limits of section 109(e) are based on the amount of debt as of the petition date.

    This question came before the Court during a hearing on May 26, 2022, at which the debtors, debtors' counsel, and the chapter 13 trustee appeared.  After hearing argument from debtors' counsel and the chapter 13 trustee, the Court found that the debtors were ineligible to proceed as debtors under chapter 13 because the amount of their noncontingent, liquidated, unsecured debt as of the petition date exceeded the statutory eligibility thresholds contained in section 109(e).  Because these debtors had converted their case from chapter 7 to chapter 13

although they were ineligible for chapter 13, the Court determined it was appropriate to reconvert their case back to chapter 7. This opinion explains the Court's ruling.

## JURISDICTION

This Court has jurisdiction over this bankruptcy case by the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. In this bankruptcy case, the Court must apply the statutory qualifications for chapter 13 bankruptcy eligibility. This is a core bankruptcy proceeding.

## BACKGROUND

Allen Wayne Knott and Sabrina Gale Knott formerly operated as proprietors of an unincorporated roofing business. The business failed. On August 6, 2021, Allen and Sabrina Knott filed a voluntary chapter 7 petition along with the required schedules and statements. *See* ECF Doc. No. 1.

According to Mr. and Mrs. Knott, at the time they filed bankruptcy, they owed debts to four secured creditors. *See* Schedule D: Creditors Who Have Claims[1] Secured by Property, ECF Doc. No. 1, at 22–24. All but one of these creditors were owed amounts greater than the value of the collateral, and so three of these creditors had an unsecured portion of their debt for the difference between the total secured debt and the value of the collateral. Specifically, on Schedule D, the debtors report they owe secured debt totaling $417,448.40 and value the collateral securing

---

[1] Both "claim" and "debt" are defined terms under the Bankruptcy Code. *Compare* 11 U.S.C. § 101(5)(A) (defining "claim" as meaning, in part, "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"), *with id.* § 101(12) ("The term 'debt' means liability on a claim.").

While the terms are closely related, they are decidedly different. For example, although a debtor may receive a discharge of his debts (the liability), his creditors may nevertheless file a claim against the bankruptcy estate based on their right to payment. Congress used the term "debt" in section 109(e), but the Official Forms instruct the debtor to list "claims" when identifying their creditors. Because Congress specified the amount of "debt" in section 109(e), the Court will use "debt" throughout this decision when referring to the criterion.

that debt at $166,700. For this reason, they report the unsecured portion of the debt on Schedule D as $250,748.40.

According to the Knotts' schedules filed with the petition, at the time they filed bankruptcy, they owed debts to 104 unsecured creditors (2 priority unsecured creditors and 102 nonpriority unsecured creditors). *See* Schedule E/F: Creditors Who Have Unsecured Claims, ECF Doc. No. 1, at 25–60. Mr. and Mrs. Knott report debts to these 104 creditors totaling $508,313 (priority unsecured of $8,750 plus nonpriority unsecured of $499,563). *Id.* at 61. Not a one was scheduled as unliquidated or contingent.

Mr. and Mrs. Knott report that they were parties to 29 separate lawsuits against them from creditors, either pending at the time of the petition or concluded in the months before the petition. *See* Statement of Financial Affairs for Individuals Filing for Bankruptcy, ECF Doc. No. 1, at 77–80. They report 65 individuals with whom they have an executory contract, from most of whom they note they received a roofing business deposit for uncompleted work. *See* Schedule G: Executory Contract and Unexpired Leases, ECF Doc. No. 1, at 63–68. In total, Mr. and Mrs. Knott admit owing, at the time of the petition, unsecured debts in the amount of $759,061.40 (Column C of Schedule D + priority debts and scheduled unsecured debts on Schedule E/F).[2]

On September 29, 2021, Andrew S. Goldstein, the chapter 7 trustee, filed a Request for Asset Notice. *See* ECF Doc. No. 20. Accordingly, the Court entered a Notice of Need to File Proofs of Claim and sent the notice to creditors and parties in interest. *See* ECF Doc. Nos. 21, 22.

Five months later, in February 2022, Mr. and Mrs. Knott filed a Notice and Motion to Convert Case from Chapter 7 to Chapter 13. *See* ECF Doc. No. 35. According to their motion,

---

[2] The debtors also recount five separate seizures of assets including a criminal forfeiture action. *See* Statement of Financial Affairs for Individuals Filing for Bankruptcy, ECF Doc. No. 1, at 80–81. They do not disclose any criminal fine or other debt associated with the criminal action. As such, the debt for the criminal fines has not been included in the total debt computation.

3

the debtors sought to convert to chapter 13 "in order to pay their creditors the amount required pursuant to 11 U.S.C. § 1325." *Id.* The Court issued a form order converting the case to chapter 13 on March 2, 2022. *See* ECF Doc. No. 49. The Court then issued the form Notice of Chapter 13 Bankruptcy Case, scheduling an initial confirmation hearing to be held on April 27, 2022. *See* ECF Doc. Nos. 50, 51.

The debtors requested and the Court permitted an extension of time to file a chapter 13 plan and amended schedules. *See* ECF Doc. Nos. 53, 54. The debtors ultimately filed a chapter 13 plan and amended Schedules I and J. *See* ECF Doc. Nos. 56, 57. In their amended schedules, the debtors report each of them having regular income from employment obtained post-petition. *See* Schedule I: Your Income, ECF Doc. No 56, at 4–5. The debtors included with the amended Schedules I and J, a statistical summary schedule that discloses a total for their debts in an amount significantly lower than they disclosed on the statistical summary filed with their original schedules. Oddly, the statistical summary filed after conversion to chapter 13 is not marked as amended nor is it accompanied by the schedules from which the summary totals are compiled. In the statistical summary filed at ECF Doc. No. 56 on March 25, 2022, the schedule reports total liabilities of $607,849.16, which is a dramatic reduction from the $925,761.40 total amount they report on the original summary filed with the petition.

After conducting the meeting of creditors, the chapter 13 trustee filed a Motion to Prohibit the Sale, Transfer, or Disposition of Personal Property. *See* ECF Doc. No. 61. The Trustee described the debtors' prepetition transfers intended to frustrate and avoid creditors, specific undisclosed assets, possible additional undisclosed assets, the impact of the criminal forfeiture action, and the need to prevent unauthorized transfers of property of the estate. *Id*. The chapter 13 trustee also filed an objection to confirmation and motion to dismiss or convert the case. *See*

4

ECF Doc. No. 60.  In it, the trustee pled that the debtors are not eligible for chapter 13 because their debts exceed the statutory limits of 11 U.S.C. § 109(e).

At the initial hearing on confirmation of the plan and the trustee's motion to dismiss or convert, the debtors requested a continuance to permit an auctioneer to evaluate some of their personal property.  The trustee consented to the continuance, agreeing that it was appropriate for an auctioneer to evaluate the property and noting that he would like to be heard at the continued hearing on his motion to convert.  The Court approved a continuance of the hearing to May 26, 2022, and directed the debtors show cause at the continued hearing why the Court should not dismiss or reconvert the case for lack of chapter 13 eligibility.  *See* Order, ECF Doc. No. 67 (entered May 6, 2022).[3]

During all this time, creditors filed proofs of claim.  As of May 4, 2022, 90 proofs of claim had been filed.  The claim amounts in these proofs of claim total $611,994.22 of which $175,383.53 is claimed as secured.  Based on the filed proofs of claim, $175,383.53 reflects secured claims and $436,610.69 reflects unsecured claims, an amount more than the unsecured debt limit applicable to this case under section 109(e).

About an hour before the scheduled May 26, 2022 hearing on eligibility, the debtors filed amended schedules.  *See* ECF Doc. No. 71.  The amended schedules paint a drastically different debt picture than those filed on the petition date.

Specifically, on Amended Schedule D, the debtors report they owe secured debt totaling $190,170.13, down from the $417,448.40 amount reported on their originally filed schedules.  The debtors schedule the unsecured portion of the secured claims as $23,470.13, down from the $250,748.40 reported on their originally filed schedules (down by $227,278.27).  The unsecured

---

[3]    The order provided, in part, that "Debtors shall appear and show cause why their case should not be reconverted to Chapter 7 or be dismissed for failure to meet" the chapter 13 eligibility provisions of section 109(e).

5

debt reported on Amended Schedule E/F similarly shrank. The reported total amount of priority and nonpriority unsecured debt declined from $508,313 as filed with the petition to $406,568.13, a decline of $101,744.87.[4] Even with these amendments, the Knotts still schedule their unsecured debt in an amount over the applicable debt limit. The amended schedules report a total of $430,038.26 for unsecured debt when the applicable debt limit for unsecured debt in this case is $419,275.

In the schedules filed with the petition, the debtors name the creditors, disclose the addresses, and report an amount owed to each creditor. In the schedules filed an hour before the hearing on eligibility, the debtors schedule an amount owed to creditors who filed a proof of claim yet do not disclose an amount owed to those creditors who did not file a proof of claim. For creditors who did not file a proof of claim in this case, the debtors schedule the amount owed as "unknown."[5] In doing so, the debtors are removing the amounts owed to these creditors from their total debt calculation because once the amount owed is scheduled as "unknown," it is not counted in the total calculation disclosed on the schedules.

---

[4]    The Summary of Your Assets and Liabilities (Official Form 106Sum) filed on May 26, 2022, also varies from the summary filed when the debtors converted to chapter 13. The summary filed on May 26, 2022, reports total liabilities as $596,738.26 but the amended summary filed on March 25, 2022, shows the total liabilities as $607,849.16. *Compare* ECF Doc. No. 56, at 2, *with* ECF Doc. No. 71, at 2.

[5]    The practice of listing "unknown" on the schedules is neither uncommon nor *per se* inappropriate. This practice is particularly common and frequently necessary when a debt is unliquidated. By contrast, if the debt is liquidated, an "unknown" designation is improper. "A debt is liquidated if the amount of the debt is readily determinable." *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 873 (B.A.P. 9th Cir. 2002) (citing *In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999); *In re Nicholes*, 184 B.R. 82, 89 (B.A.P. 9th Cir. 1995)). Scheduling readily determinable debt amounts as "unknown" may raise good faith concerns. *See, e.g.*, *In re Faulhaber*, 269 B.R. 348 (Bankr. W.D. Mich. 2001) (finding that the debtor's post-petition amendments to his schedules were not in good faith when the purpose of the amendments were to reschedule a $615,000 debt as "unknown" in an attempt to meet the chapter 13 eligibility requirements).
    In this case, the debtors' originally filed schedules reflect amounts received for "Roofing Business Deposits." The debtors' amended schedules filed May 26 reflect the amounts owed to creditors who paid a deposit as "unknown" only for those who did not file a proof of claim. The "unknown" amounts are not scheduled as "unliquidated." It remains unclear why the schedules list creditors who have liquidated claims yet the amount of such claim is scheduled as "unknown" or why creditors who have not filed proofs of claim are now scheduled as being owed "unknown" amounts even though they are creditors from whom the debtors received a deposit for unperformed work.

6

At the continued hearing on confirmation of the plan and the trustee's motion to dismiss or convert, held on May 26, 2022, the chapter 13 trustee appeared, debtors' counsel appeared, and the debtors appeared. Counsel for the debtors urged the Court to find the debtors eligible for chapter 13 based on the filed proofs of claim as adjusted for anticipated objections to the allowance of some of those proofs of claim. Counsel implored the Court to permit the debtors the opportunity to proceed under chapter 13 and potentially pay to creditors holding allowed unsecured claims more than those creditors would receive in a chapter 7 liquidation.

The chapter 13 trustee agreed that the proposed plan, if completed, would likely render a greater distribution to creditors holding allowed claims than would a chapter 7 liquidation. The chapter 13 trustee described proposed modifications to the plan provisions. These proposed modifications would provide fair and reasonable treatment to many of the creditors, specifically many *pro se* homeowners who were owed for deposits made to the debtors for unperformed work and who filed proofs of claim. The plan as modified would meet the requirements of confirmation, if the Court determined the debtors to be eligible to be debtors under chapter 13, the trustee noted.

After considering the arguments of the parties, the record in the case, and applicable Bankruptcy Code provisions, the Court ruled. The Court found the debtors to be ineligible for chapter 13 and concluded the case should be reconverted to chapter 7. Counsel for the debtors noted his objection to the ruling.

## CONCLUSIONS OF LAW

Chapter 13 is not for everyone. Only an individual with regular income or an individual with regular income and such individual's spouse,[6] who owe, on the date of the filing of the

---

[6] *See* 11 U.S.C. § 101(30) ("The term 'individual with regular income' means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker.").

petition, noncontingent, liquidated, unsecured debts of less than $419,275, and noncontingent, liquidated, secured debts of less than $1,257,850, are eligible to be debtors under chapter 13, as of August 6, 2021.[7] In other words, debtors who do not meet these criteria are restricted from chapter 13.

The chapter 13 eligibility requirements, as of the petition date in this case, set total limits for debts based on two criteria: secured or unsecured. The statutory language excludes from the total calculation debts that are unliquidated or contingent. If a debt is noncontingent and liquidated, it is included in the total calculation and counted in its respective category, secured or unsecured. The statute does not distinguish or exclude from the calculation a debt within the category based on its classification as priority or nonpriority. This means that debts which are unsecured are included in the total unsecured calculation whether the debts are classified as priority unsecured or nonpriority unsecured. *See* 11 U.S.C. § 109(e). Likewise, it is immaterial if the unsecured debt is nondischargeable or nonconsumer; if it is unsecured and is noncontingent and liquidated, it is included in the calculation. *See id*.

In some circumstances a debt may fall into both the secured and unsecured categories. Bankruptcy Code section 506(a)(1) provides an allowed claim of a creditor may be part secured and part unsecured. Specifically, an allowed claim may be secured to the extent of the value of

---

[7] The chapter 13 "debt limits" are adjusted every three years. *See id.* § 104(b). From April 1, 2019, through March 31, 2022, the noncontingent, liquidated, unsecured debt limit was $419,275, and the noncontingent, liquidated, secured debt limit was $1,257,850. Pursuant to section 104(b) of the Bankruptcy Code, the Judicial Conference of the United States issued a notice on February 4, 2022, that effective April 1, 2022, the unsecured debt limit would be increased to $465,275 and the secured amount to $1,395,875. *See* 87 Fed. Reg. 6625, 6625 (Feb. 4, 2022). Because the petition in this case was filed on August 6, 2021, the applicable debt limits are the amounts that were in effect as of the filing of the petition.
   On June 21, 2022, the Bankruptcy Threshold Adjustment and Technical Corrections Act was enacted. Pub. L. No. 117-151, 136 Stat. 1298 (2022). The Act alters the chapter 13 eligibility requirements for a period of two years from the date of enactment. *Id.* § 2(i)(1)(A), 136 Stat. at 1300. Section 2(c) of the Act amends section 109(e) of the Bankruptcy Code; the separate unsecured and secured debt limits are replaced by one combined total noncontingent, liquidated debt limit of $2,750,000. *Id.* § 2(c), 136 Stat. at 1299. The new chapter 13 eligibility limits were not in effect when Mr. and Mrs. Knott filed this case, and the new law is not retroactive.

the creditor's interest in the estate's interest in the collateral and may be unsecured to the extent that the value of such creditor's interest is less than the amount of the claim. *See* 11 U.S.C. § 506(a)(1). When the debt is bifurcated into secured and unsecured portions, the portions are counted in the separate categories for chapter 13 eligibility. Therefore, when calculating the total amount of unsecured debt for purposes of chapter 13 eligibility, "the court must add the amount of unsecured debt and the amount by which secured creditors are undersecured." *Brown & Co. Secs. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246, 247 (4th Cir. 1991) (citing 11 U.S.C. § 506(a)).

Before separating the debts into the categories, the debts must be identified. The starting point for identifying the debts is the debtor's schedules.

To proceed in bankruptcy, the debtor must disclose (in his schedules) his assets and liabilities, income, and expenses.[8] Failure to disclose, or intentionally misrepresenting, this information may at best lead to dismissal of the case and at worse the permanent forfeiture of the right to a bankruptcy discharge of existing debts.[9] With this backdrop, it makes sense that courts consider the bankruptcy schedules to determine the threshold question of eligibility. *See, e,g.*, *In re Salazar*, 348 B.R. 559, 565 (Bankr. D. Colo. 2006) (discussing the purpose in reviewing schedules and claims to determine if debts are liquidated).

On the other hand, what if the debtor incorrectly scheduled his debts? Are courts bound by the schedules when determining a debtor's eligibility? Of course, the answer is no. A court is not bound to look solely at a debtor's schedules. Indeed, as the Honorable Ross W. Krumm of this Court has previously held, "[t]o do so would allow [] putative debtors to bootstrap themselves into Chapter 13 by self-serving estimations that ignore the realities of their respective financial

---

[8]   11 U.S.C. § 521(a)(1).

[9]   *See id.* §§ 521(a), 523(a)(10), 707(a), 727(a), 1307(c).

9

obligations." *In re Wiencko*, 275 B.R. 772, 782 (Bankr. W.D. Va. 2002). Bankruptcy courts may look beyond the schedules if the schedules were not prepared in good faith, such as when schedules inappropriately list amounts less than what is owed to create a listing that is within the debt limits or when an amount is scheduled as "contingent" or "unliquidated" without meeting the definitions of those terms. *See Guastella v. Hampton (In re Guastella)*, 341 B.R. 908 (B.A.P. 9th Cir. 2006).

In this case, the debtors assert that the Court should overlook the debtors' sworn schedules filed throughout the case in determining the amount of noncontingent, liquidated, unsecured debt as of the petition date. The debtors' assertion that the Court must not rely upon amounts they have sworn under penalty of perjury to be true is as intriguing as it is incorrect. If the debtors believe that the schedules they filed are accurate, then it is unclear why the Court should not take the debtors' sworn statements into account in determining the amount of debt. *See also In re De La Hoz*, 451 B.R. 192, 202 (Bankr. M.D. Fla. 2011) ("[W]here a debtor's schedules reflect debts in excess of the Section 109(e) limits, the Court cannot look beyond the debtor's schedules at the proofs of claim actually filed to determine the debtor's Chapter 13 eligibility.").

The debtors suggest the Court should base their eligibility for chapter 13 upon the total debt claimed in the unsecured proofs of claims filed as of the bar date, reduced by amounts determined after the debtors file objections to some of the filed claims and assuming those objections are sustained. The debtors' suggestion is inconsistent with the Code. The Code limits chapter 13 eligibility based on debts as of the petition date not on how many creditors chose to file a claim to participate in distributions from the bankruptcy estate. *Compare* 11 U.S.C. § 109(e) (referring to debts the debtor "owes, on the date of the filing of the petition"), *with id.* § 501 ("A creditor . . . may file a proof of claim"). The debtors' purpose in considering the filed claims and *not* their scheduled claims is to disregard their admitted liability to maneuver into chapter 13 when

10

that chapter (as of the date they filed this bankruptcy) is for individuals who have much less unsecured debt than they do.[10] Rather than look to filed proofs of claim solely to supplement the schedules, or to supplant inaccurate or misleading schedules, the debtors urge the Court to consider *only* certain filed proofs of claim to discount the total amount of their debt as of the petition date.

The debtors beg the Court to permit them to proceed in chapter 13 "to pay their creditors." If the debtors wish to voluntarily pay their creditors, they do not need this Court's permission. The Code does not limit a debtor from voluntarily paying creditors after the bankruptcy case has concluded even if the personal liability has been discharged. *See* 11 U.S.C. § 524(f). As such, they are free to voluntarily pay amounts to their creditors if that is their desire even if they are not in a chapter 13 bankruptcy case.

The debtors ask this Court to disregard the debt they admit they owe to allow them to use chapter 13 when, based on their admissions, they do not meet the eligibility qualifications. On the date they filed this bankruptcy, Mr. and Mrs. Knott scheduled noncontingent, liquidated, unsecured debts (including unsecured portions of secured debts) of $759,061.40, an amount well in excess of the statutory cap of $419,275. Subsequently, Mr. and Mrs. Knott amended their schedules to reduce the amount of noncontingent, liquidated, unsecured debts (including unsecured portions of secured debts) to $430,038.26, an amount still exceeding the statutory cap of $419,275. Whether the Court looks to the Knotts' originally filed sworn schedules or their sworn amended schedules, it is undisputed that the amount of their debt as of the petition date exceeds the debt limits imposed by section 109(e).

Disallowance of certain filed proofs of claim do not change the amount of debt owed as of the petition date. And even if it did, such adjustment does not seem to matter in this case. The

---

[10]     *See supra* note 7 on the recently enacted Bankruptcy Threshold Adjustment and Technical Corrections Act.

11

claims register shows the total amount of claims filed in this case was $611,994.22. Of that amount, $175,383.53 was claimed as secured, leaving $436,610.69 as unsecured. One claimant, Englert, Inc., withdrew its duplicate unsecured claim (filed as proof of claim number 84) for $12,365.96, reducing the unsecured portion of filed claims to $424,244.73. *See* ECF Doc. No. 55. In addition, the debtors have objected to one claim, which if sustained would decrease the total amount by $3,000, rendering the total amount of unsecured debt based on filed proofs of claim as $421,244.73. *See* ECF Doc. No. 69.[11] Even if the debtors are correct and the eligibility inquiry should be made based on claims filed in their case, the debtors would still not meet the debt limits for cases filed on the date they filed their petition. If the debtors are correct that the eligibility inquiry should be made after accounting for claim disallowance upon the debtor's objection, the debtors still do not meet the debt limits in this case, because $421,244.73 is over the applicable debt limit of $419,275 in this case.

This Court is not persuaded that the eligibility inquiry should be made only upon consideration of allowed claims after concluding the claims allowance process. Such inquiry could not be conducted at the petition date and ignores the statutory definition of who is eligible to be a debtor. Nevertheless, if the Court were to adopt the debtors' approach to the threshold eligibility inquiry, the debtors in this case would still be ineligible for chapter 13.

The debtors are not helped by proposing a chapter 13 plan that may meet the requirements of confirmation. The plan does not change the amount of debt as of the petition date. Mr. and Mrs. Knott are not eligible for chapter 13 based on section 109(e) of the Bankruptcy Code in effect

---

[11]    On June 23, 2022, the claimant whose claim was objected to filed a request to withdraw her proof of claim for $3,000. *See* ECF Doc. No. 75. However, the withdrawal is ineffective as the Court has not issued any order authorizing the claimant to do so. *See* Fed. R. Bankr. P. 3006 ("If after a creditor has filed a proof of claim an objection is filed thereto . . . , the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee . . . .").

12

at the time they filed their petition. *See Salazar*, 348 B.R. at 562 ("Plan confirmation issues are moot if the Debtors are ineligible for chapter 13 relief . . . .").

## CONCLUSION

Having found that the debtors are not eligible to proceed as chapter 13 debtors in this case, at the hearing on May 26, 2022, the Court granted the trustee's motion to reconvert this case to chapter 7 as being in the best interest of creditors and the estate. *See* 11 U.S.C. § 1307(c).

The Court will issue a separate order based on the conclusions in this Memorandum Opinion.